[No. 20707.  Department Two.— December 15, 1890.]

# THE PEOPLE, RESPONDENT, *v.* DANIEL BEMMERLY, APPELLANT.

CRIMINAL LAW — HOMICIDE — EVIDENCE — DYING DECLARATION. — Upon the trial of a defendant charged with murder, the dying declaration of the deceased, in order to be admissible in evidence, need not show or state, in terms, that it was made under a sense of impending death, if there is sufficient evidence *aliunde* the written declaration to show that it was so made.

ID. — WRITTEN DECLARATION OF DECEASED — NOTES OF ORAL STATEMENT. — Where notes were taken of what the deceased said, and a statement written out therefrom, which was read to the declarant, sentence by sentence, and the accuracy of each sentence assented to by him, and then signed in the presence of witnesses, the statement becomes his dying declaration, although the written declaration contains some words that were not used by the declarant in his oral statement.

ID. — PRACTICE — CHALLENGE OF JUROR — ACTUAL BIAS — APPEAL — EXCEPTION. —The ruling of the trial court upon the challenge of a juror for actual bias will not be reviewed on appeal, and its disallowance is not the subject of exception.

ID. — PEREMPTORY CHALLENGE. —It is not error to permit the prosecution to peremptorily challenge a juror after he has been sworn, where good reasons are shown therefor.

ID. — INSTRUCTION — REASONABLE DOUBT. — An instruction to the jury defining a reasonable doubt as "such a doubt as would induce a man of reasonable firmness and judgment to act upon it in matters of importance to himself" is erroneous.

ID. — INDORSEMENT OF INSTRUCTIONS — REVIEW ON APPEAL. — In the absence of an indorsement showing whether a certain instruction was given, it will not be reviewed on appeal.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Craig & Hawkins, Clark & Aram,* and *J. E. Strong,* for Appellant.

*Attorney-General Johnson, Ed. E. Gaddis,* and *C. W. Thomas,* for Respondent.

SHARPSTEIN, J. — Upon the trial of the defendant, upon an information in which he was charged with

murder, a document purporting to be the dying declaration of the deceased was offered in evidence by the prosecution. The defendant objected to its introduction. The objection was overruled, and defendant excepted. The grounds of objection appear to be: 1. The declaration does not show that it was made under a sense of impending death. It commences as follows: "I, Mat Faigle, aged forty-three, and a native of Germany, believing my life to be in great danger, being shot in the left side, above the heart, by a ball from the pistol in the hands of one John Wahlfrom, do now, before my God and the undersigned witnesses, make the following true statement, believing it to be my last."

Whether the statement, alone, would be sufficient to satisfy the rule that the declaration must be made under a sense of impending death need not be decided in this case, as there was other evidence that it was so made. Professor Greenleaf says: "It is essential to the admissibility of these declarations, and is a preliminary fact, to be proved by the party offering them in evidence, that they were *made under a sense of impending death ;* but it is not necessary that they should be stated at the time to be so made. It is enough, if it satisfactorily appears, in any mode, that they were made under that sanction, whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind." (1 Greenl. Ev., sec. 158.) *Aliunde* the written declaration, there is sufficient evidence that it was made under a sense of impending death. Three or four hours after declarant had received the fatal wound, he was told by his attending physician that he was going to die. And on one occasion decedent told those who were present at his bedside that he knew that he would die, and he

wanted to talk privately with his cousin, who was also present. There is much more evidence of similar import.

Another ground of objection is, that the declaration introduced in evidence is not the one made by the dying man. The manner of taking the declaration, as detailed by Dr. Dillon, by whom it was taken, is as follows: He sat on the side of declarant's bed, and took notes of what declarant said. After taking said notes, witness withdrew to an adjoining room, and from such notes wrote out the statement introduced as a dying declaration. After that was prepared, he returned to the bedside of declarant, and read him each sentence as he went along, and asked him if that was just what he meant, and he said "Yes"; and in that way the whole paper was read to declarant before he signed it. All this occurred in the presence of eight persons, who signed the declaration as witnesses. That this document was not literally copied from the notes taken by Dr. Dillon, he admits. Nor is the language precisely that employed by the declarant in his oral statement to Dr. Dillon. But the doctor testified that he endeavored to give the substance of the statement made to him by the declarant, and he thinks he succeeded, although the written declaration contains some words that were not used by the declarant in his oral statement. However that may be, the declaration introduced in evidence is nevertheless the dying declaration of the declarant. It was read to him, sentence by sentence, and the accuracy of each sentence was assented to by him; and after hearing it all read in that manner, he signed it in the presence of witnesses. It then became his dying declaration. If he made another declaration inconsistent with or contradictory of this, it did not render this inadmissible, but might be urged to the jury as affecting his credibility. Upon the facts disclosed by the record, we think the document which purported to be the dying declaration of Mat Faigle was properly admitted in evidence.

Under repeated decisions of this court, the ruling of the court upon the challenge of the juror H. H. Smith, for actual bias, cannot be remedied here. (*People* v. *Riley,* 65 Cal. 107; *People* v. *Cotta,* 49 Cal. 166; *People* v. *Vasquez,* 49 Cal. 560; *People* v. *Taing,* 53 Cal. 602.)

No exception can be taken to the disallowance of a challenge to a juror for actual bias. (Pen. Code, sec. 1170.)

It was not error to permit the prosecution to peremptorily challenge the juror Hall after he had been sworn, good reasons being shown therefor. (Pen. Code, sec. 1068; *People* v. *Montgomery,* 53 Cal. 576.)

Instruction No. 10, given at the request of the prosecution, gives a lengthy definition of "a reasonable doubt," and contains this clause: "It must not be one that is merely fanciful,—created ingeniously in your minds, to escape the consequences of an unpleasant verdict; it must be an honest doubt,—such a doubt as strikes the conscientious mind, and one that clouds the understanding of those who are honestly seeking to arrive at the truth; *such a doubt as would induce a man of reasonable firmness and judgment to act upon it in matters of importance to himself.*" In *People* v. *Brannon,* 47 Cal. 96, "the jury were told that it was their duty to convict if they should be satisfied of the guilt of the defendant to such a moral certainty as would influence the minds of a jury in the important affairs of life." This was held to be error. The court said: "The judgment of reasonable men in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of criminal cases, involving life or liberty, something further is required. There must be more than a preponderance of evidence. There must be in the minds of the jury an abiding conviction, to a moral certainty, of the truth of the charge, derived from a

comparison and consideration of the evidence. They must be entirely satisfied of the guilt of the accused."

In *People* v. *Ah Sing*, 51 Cal. 372, "the court below, after instructing the jury that the defendants on trial upon an indictment for murder are presumed to be innocent until proven guilty beyond a reasonable doubt, proceeded as follows: 'A reasonable doubt is that state of a case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot feel an abiding conviction, to a moral certainty, of the truth of the charge. The doubt must not be vague and shadowy. Absolute certainty is rarely attainable, and is never required. *If the evidence is such that a man of prudence would act upon it in his own affairs of the greatest importance, then there cannot remain a reasonable doubt within the meaning of the law.*' The defendants excepted to so much of the instruction as is Italicized."

The court said it is certainly a mistake to say that there cannot remain a reasonable doubt when even the evidence is such "that *a man of prudence would act upon it in his own affairs of the greatest importance.*" Upon the authority of these cases, we are bound to hold that so much of the instruction in this case as we have Italicized is erroneous.

Instruction No. 4 is not erroneous.

There is no indorsement showing whether instruction No. 24 was given, and in the absence of such indorsement, we cannot review it.

We fail to discover anything in the other points discussed by counsel that requires consideration here. But the errors which we have pointed out require that the judgment and order be reversed.

Judgment and order reversed, and cause remanded for a new trial.

THORNTON, J., and McFARLAND, J., concurred.

Hearing in Bank denied.