THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CELESTINO TORRES RIVERA, Defendant and Appellant.

No. 5499. Argued February 1, 1935.—Decided February 8, 1935.

*Burset & Pérez Pimentel* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Celestino Torres Rivera was charged with having committed voluntary manslaughter upon a sudden quarrel or heat of passion. It was alleged that the information was vague and indefinite and that it tended to confuse the defendant because it did not clearly express the acts constituting the offense and because it charged more than one offense, and the defendant was not informed of the offense against which he must defend himself.

The record shows that the arraignment took place on May 15, 1933, and that the trial was held on September 13 of the same year. The defendant made no objection to the information when it was read to him, but merely pleaded not guilty and requested a trial by jury. And, although it is

true that he appeared without counsel, the court, several weeks before the trial, appointed Attorney José Pérez Pimentel to defend him.

No objection whatever was made to the information until the day of the trial, after the parties had announced that they were ready for trial and when the jurors were about to be drawn. The defense then demurred to the information. The court stated that a plea of not guilty had already been entered and the defense announced that its exception was privileged. The court did not so consider it, after learning the nature of the demurrer. The attorney then stated that he proposed to show that the facts alleged did not constitute a public offense. The court finally disallowed the demurrer, apparently because it had been presented at the trial, some months after the arraignment.

Since the exception entered by the defendant was not privileged, it cannot be said that the lower court committed the error assigned. The defense argued that the information charges the commission of the offense in the disjunctive, to wit: upon a sudden quarrel or heat of passion. We believe, as the lower court did, that he came too late.

In the case of *State* v. *Mahoney*, 24 Mont. 284, 61 Pac. 647, decided by the Supreme Court of Montana, it was held that any objection to the inclusion, in a count, of the different forms in which an offense may have been committed, must be made in the district court before pleading to the information. If the question was not raised in the trial court it should not be considered on appeal. Section 77 of our Penal Code is identical with section 9151 of the Revised Codes of Montana. This section reads thus:

"The indictment or information must charge but one offense, but the same offense may be set forth in different forms under different counts, and when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same counts."

This court, in the case of *People* v. *Alomar*, 10 P.R.R. 282, expresses a viewpoint very similar to that of the Supreme Court of Montana. Section 152 of the Code of Criminal Procedure provides that both the demurrer and the plea must be entered in open court, either at the time of the arraignment or at such other time as may be allowed to the defendant for that purpose.

In the case of *Smith* v. *State*, 191 N. W. 687, decided by the Supreme Court of Nebraska, the fact that the information was drawn in the disjunctive was assigned as error. The court, in deciding the question, said:

"In this case it does not appear that the defendant was prosecuted for more than the one crime, and where the use of the disjunctive does not result in a prosecution for distinct or separte crimes the objection that the allegation was in the disjunctive cannot be successfully urged upon review."

The court did not err in overruling the demurrer entered by the defense on the ground that it came too late, but even if the demurrer had been presented in time, a reversal of the judgment would not lie because the information, although defective (*People* v. *Rodríguez*, 43 P.R.R. 127) as well as the evidence, shows that in this specific case the rights of the defendant have not been substantially prejudiced. The information does not charge more than one crime. The affair which culminated in the death of Antonio Mercado is one. The theory of the defense, as well as that of the information, shows that words were exchanged between Celestino Torres Rivera and Antonio Mercado, that there was an assault, and that in the heat of the struggle the defendant took the life of his opponent. In truth, both forms were present in the commission of the crime; the sudden quarrel and the heat of passion. A reading of the evidence presented suffices to reach the conclusion that Celestino Torres acted under the excitement produced by the struggle with the victim. There has been no substantial prejudice to the rights of the defendant. Either of the two forms alleged would have been

sufficient to meet the evidence. The defendant cannot say that he has been misled by the terms in which the information is drawn. The facts show that he was informed of the manner in which the offense charged was committed.

In the case of *Smith* v. *State, supra,* the court said:

"The information is vigorously attacked because its allegations are in the disjunctive. In this particular it follows the language of the act, section 9622, Comp. St. 1922, verbatim. Our court has frequently approved the practice of drawing the information in the words of the statute, and in this case no surprise or disadvantage to the defendant was occasioned thereby, and no miscarriage of justice can have resulted therefrom."

As a second assignment of error it is urged that the court ordered the clerk to take the final oath of the jury before the panel was completed. After the first twelve jurors had been examined and the parties had stated that they had no challenges for cause, the peremptory challenges were made. The defense peremptorily challenged two jurors, stating that it had no other peremptory challenges to make at the time. The district attorney made no challenges. The clerk proceeded to administer the final oath to the ten members of the jury, over the objection of the defense on the ground that the jury was not complete. The court stated that the oath was taken after both parties had stated that there were no more challenges to be made to these gentlemen. Then two more jurors were drawn and examined. The district attorney made no peremptory challenge. The defense challenged one. The final oath of the other was taken. The defendant again objected. A new juror was drawn, examined by both parties, and challenged by the district attorney. Another peremptory challenge was made by the defense and the jury was finally completed with a new member who was accepted by both parties. At this time the defense challenged juror Luis Muñoz, Jr., who was one of the ten jurors who had been sworn by order of the court after they had been examined and the parties had been asked to make their per-

emptory challenges. The defense challenged two jurors on that occasion, Mr. Muñoz, Jr., remaining among the ten who took the final oath to try the case.

The court denied the peremptory challenge of juror Muñoz, holding that challenges must be made before the final oath and before the jury is completed, in accordance with section 221 of the Code of Criminal Procedure and with the rule established by said court on the day on which the term of jury trials began, that is on September 5. The defense also took an exception to the decision of the court.

Both parties, the Prosecuting Attorney (*Fiscal*) and the defense, agree that the court erred in denying the peremptory challenge of Mr. Muñoz, Jr. The record does not show that the defendant adduced any reason or cause for challenging this juror after the final oath had been taken. Judging from his statements, the Prosecuting Attorney is of the opinion that section 221 of the Code of Criminal Procedure does not authorize the lower court to deny the peremptory challenge made by the defendant. The Prosecuting Attorney cites, in support of his position, the doctrine laid down in *People* v. *Rivera*, 37 P.R.R. 706, and *People* v. *Munera*, 39 P.R.R. 267. In the latter case the decisions of this court construing section 221, cited above, are studied, and the following paragraphs of the opinion of this court in *People* v. *Vázquez*, 20 P.R.R. 338, are copied:

"The appellant also alleges that the court erred in not compelling the *fiscal* to make his challenges as each juror appeared. It appears that the *fiscal* reserved his peremptory challenges and the court permitted him to do so, granting a similar privilege to the defense.

"Section 221 of the Code of Criminal Procedure provides that the challenge must be made when the juror appears and before he is sworn to try the case, and also that the court may for cause permit it to be made after the juror is sworn and before the jury is completed.

"Every juror is required to take two oaths: (1) the *voir dire* as to his qualifications and (2) to try the particular case before the

court. Undoubtedly section 221 of the Code of Criminal Procedure refers to the second oath.

"Apparently the procedure adopted by the *fiscal* in this case was not strictly in accordance with the provisions of the statute, but it is not shown to be in direct opposition thereto, because, although it is stated that the *fiscal* reserved his peremptory challenges, it is not shown that they were made after the jury had been sworn to try the case.

"Besides, as we have seen, the same statute authorizes the court to vary the order prescribed, and as jurisprudence has established that courts may decide such question in the exercise of a sound discretion (*People* v. *Montgomery*, 53 Cal., 576; *People* v. *Rodríguez*, 10 Cal., 50; *People* v. *Durrant*, 118 Cal., 179, 197), it would have to be shown that the court abused its discretional power in order that the error which may perhaps have been committed could serve as a ground for the reversal of the judgment.

"And, finally, as the *fiscal* of this court aptly says in his brief:

" 'The record does not show that any juror was peremptorily challenged by the *fiscal* after the court had ruled upon the motion of the defense and pointed out the rule to be observed by the *fiscal* in making peremptory challenges, and as the record does not show this, even in case the court committed error, it would have been immaterial because no substantial right of the appellant was prejudiced.' "

In the case of *People* v. *Rivera, supra,* cited by the Prosecuting Attorney, the defense peremptorily challenged a juror before he had taken the final oath. The lower court established the rule that jurors accepted by the parties after the peremptory challenges had been made would be accepted as members of the jury in the case, and on this ground denied the peremptory challenge. The trial court interpreted the law erroneously and the judgment was reversed. The challenges must be made before the jurors are sworn to try the case. Until this moment the parties have the right to challenge peremptorily without showing cause. After the oath has been taken the challenge may be allowed for cause only.

In the case of *People* v. *Munera, supra,* this court, without departing from the viewpoint expressed in the case of *People* v. *Vázquez, supra,* said:

"The simplest procedure and that which better adjusts itself to the liberal construction of section 221 to be found in *People* v. *Rivera, supra,* is to draw the names of a sufficient number of jurors and administer to them the first oath. Immediately follows their examination and challenges for cause. Then the peremptory challenges. If there are no challenges they are all sworn to try the case. If there are any, without swearing those left to try the case new names are drawn and the same procedure is followed. When the parties finally accept the jury or there are no more challenges for cause and the peremptory challenges allowed are exhausted, then the jurors as a panel are sworn to try the case."

In the foregoing words this court recommends to the trial courts a practice which, in our opinion, should be followed. In the case of *Mathis* v. *State,* 34 So. 287, decided by the Supreme Court of Florida, it is said that the best practice is to postpone the final oath of the jurors until the panel has been completed, in order to prolong as much as possible the time for the peremptory challenges; but that in the absence of a statutory provision, the rule is that the time and manner of swearing, after the jurors have been examined as to their capacity, rests within the sound discretion of the court, the exercise of which should not be disturbed by a court of appeal unless there has been a clear abuse of discretion. In the said case the oath was administered to some members of the jury before the same had been completed, and the defendants were denied the right to challenge certain jurors peremptorily after they had taken the final oath. Although we believe that the practice recommended by us and accepted as sound by the Florida court should be observed, nevertheless, if the lower court has not abused its discretion and abides by the statutory provisions, it is not possible to reverse a judgment because of the fact that the court did not adhere strictly to the practice recommended by us.

■ There is no right to challenge a juror peremptorily after the juror has been sworn. 35 C. J. 416, par. 479.

Section 1068 of the Penal Code of California, which corresponds to section 221 of our code, provides that the chal-

lenge should be made when the juror appears, and before he is sworn to try the cause; but the court may for cause permit it to be taken after the juror is sworn and before the jury is completed.

The latest California decision we know construing this section is that of *People* v. *Schmitz*, 94 Pac. 407, decided by the Court of Appeals, First District, in 1908. The Supreme Court of that State refused to reconsider the case. Before setting forth the doctrine laid down by the California court, let us copy what the Supreme Court of the United States said in the case of *St. Clair* v. *U. S.*, 154 U. S. 134, because, although the rule construed by that high court is not exactly the same as the California statute, nevertheless, its words indicate the practice established by some courts with respect to the time when the challenges should be made:

"By rule 63 of the court below, it is provided that 'in all criminal trials the designation, empanelling, and challenging of jurors shall conform to the laws of this State existing at the time, except as otherwise provided by acts of Congress or the rules of this court; but a juror shall be challenged, or accepted and sworn, in the case as soon as his examination is completed, and before the examination of another juror.'

"This rule was enforced at the trial of this case. After the first juror was examined as to his qualifications, the court announced that he must be sworn to try the case, unless challenged by one party or the other—the accused claiming the right to examine all the jurors as to their qualifications before being required to exercise his privilege of peremptory challenge as to any of them.

"This general subject was carefully considered in *Lewis* v. *United States*, 146 U. S. 379, and in *Pointer* v. *United States*, 151 U. S. 396, 407, 410, 411. Referring to section 800 of the Revised Statutes, and the act of June 30, 1879, c. 52, 21 Stat. 43, 44, we said in the latter case: 'There is nothing in these provisions sustaining the objection made to the mode in which the trial jury was formed. In respect to the qualifications and exemptions of jurors to serve in the courts of the United States, the state laws are controlling. But Congress has not made the laws and usages relating to the designation and empanelling of jurors in the respective state courts applicable to the courts of the United States, except as the latter shall by general stand-

ing rule or by special order in a particular case, adopt the state practice in that regard. *United States* v. *Shackleford*, 18 How. 588; *United States* v. *Richardson*, 28 Fed. Rep. 61, 69.' 'In the absence of such rule or order,' it was further said, 'the mode of designation and empanelling jurors for the trial of cases in the courts of the United States is within the control of those courts, subject only to the restrictions Congress has prescribed, and also, to such limitations as are recognized by the settled principles of criminal law to be essential in securing impartial juries for the trial of offences... In some jurisdictions the mode pursued in the challenging of jurors is for the accused and the government to make their peremptory challenges as each juror, previously ascertained to be qualified and not subject to be challenged for cause, is presented for challenge or acceptance. But it is not essential that this mode should be adopted.' Referring to certain observations of Chief Justice Tindal in *Regina* v. *Frost*, 9 Car. & P. 129, 137, it was further said: 'At most in connection with the report of the case, they tend to show that the practice in England, as in some of the States, was to have the question of peremptory challenge as to each juror, sworn on his *voir dire*, and found to be free from legal objection, determined as to him before another juror is examined as to his qualifications. But there is no suggestion by any of the judges in *Frost's case* that that mode was the only mode that could be pursued without embarrassing the accused in the exercise of his right of challenge. The authority of the Circuit Courts of the United States to deal with the subject of empanelling juries in criminal cases was recognized in *Lewis* v. *United States*, subject to the condition that such rules must be adapted to secure all the rights of the accused."

In the case of *People* v. *Schmitz, supra,* the court expressed itself as follows:

"The court, under defendant's objections, allowed challenges on behalf of the people to the jurors Harris and Bray. After three jurors had been examined, passed, and sworn to try the case, the district attorney asked the court to permit the people to challenge the said juror Harris (who was one of the three) peremptorily. The court thereupon, without any cause being shown or even stated, under defendant's objection, permitted the people to challenge the said juror peremptorily, and he was excused. Section 1068 of the Penal Code provides that a challenge must be taken 'when the juror appears and before he is sworn to try the cause; but the court may for cause

permit it to be taken after the juror is sworn and before the jury is completed.' It appears evident that the court could not under the section permit a challenge except 'for cause', and the cause must have been based on some fact and founded upon a proper showing of facts, upon which the court could have exercised its discretion. If the court, after a juror has been sworn to try the case, can permit him to be challenged without cause, the words 'for cause' should be stricken from the statute. The Code evidently intended that after a juror has been examined, passed, and has taken a solemn oath to try the case he could not then, except for a valid reason, be, at the caprice of one of the parties, discharged. He became a juror in that case, and thus a part of the machinery of the court. He became a part of the tribunal for the purpose of determining the guilt or innocence of the defendant. That tribunal was changed without the consent of the defendant, and in the interest of his adversary. *Greer* v. *Norvill,* 3 Hill (S.C.) 262. Defendant had the right to rely upon the fact that the juror had been sworn in exercising his right to his own peremptory challenges. The mandate of the statute appears plain and should have been followed. We know of no case, and none has been called to our attention, in which such challenge was upheld. In the early case of *People* v. *Rodríguez,* 10 Cal. 59, the court said: 'The challenge may be allowed, for good cause, after the juror is sworn. In this case no good cause was shown, and the offer to challenge was rightfully refused.' See *People* v. *Reynolds,* 16 Cal. 132; *People* v. *Scoggins,* 37 Cal. 679; *People* v. *Bemmerly,* 87 Cal. 120, 25 Pac. 266; *People* v. *Ward,* 105 Cal. 338, 38 Pac. 945; *People* v. *Durrant,* 116 Cal. 196, 48 Pac. 75. In the last-mentioned case the correct rule is laid down by the court, speaking through Mr. Justice Henshaw, where it is said: 'Section 1068 of the Penal Code, provides that a challenge (either peremptory or for cause) must be taken when the juror appears and before he is sworn to try the cause, but the court may for cause permit it to be taken after the juror is sworn. It was not error therefore for the court to permit a re-examination of the juror upon matters coming to the knowledge of the people or defendant after his acceptance, and before the completion of the jury. The course here pursued was that followed in *People* v. *Bemmerly,* 87 Cal. 117, and approved by this court.' The same rule was laid down in the later case of *People* v. *Owens,* 123 Cal. 488, 56 Pac. 251. There the juror Spencer was excused for cause after he had been sworn to try the case, but upon examination in court, 'it was shown that the juror in arriving at his verdict would be influenced by his friendship for the relatives

of the defendant.' Section 371 of the Code of Criminal Procedure of New York is in substance the same as section 1038 of our Penal Code. It provides: 'A challenge must be taken when the juror appears and before he is sworn; but the court may, in its discretion, for good cause set aside a juror at any time before evidence is given in the action.' The Court of Appeals, in *People* v. *Hughes*, 137 N. Y. 29, 32 N. E. 1105, said: 'The obvious meaning of section 371 is that a challenge for good cause, which is required to be taken before the juror is sworn, may nevertheless be taken thereafter and before evidence is given, in the discretion of the court. If it does not mean that it must necessarily mean that the court may, for any good reason, even though undisclosed, set aside a sworn juror, in its discretion. I do not think that is its meaning or its purpose. If it is, there was no sound objection possible for the prisoner's counsel to take.''

In the instant case, the defense did not lay the foundation required by the statute to exercise the right to challenge the juror after the final oath has been taken. No cause was shown for the said challenge. The defense took an exception when the clerk of the court proceeded to administer the oath to several jurors after they had been examined and the defendant made two peremptory challenges. The defense did not appeal to the discretion of the court to postpone the oath, allowing the defendant more time for the exercise of his rights, but simply took an exception because it understood, according to its brief, that the court lacked power to administer the final oath before the jury had been completed. The error assigned must be overruled.

█ Lastly, it is urged that the lower court erred in convicting the defendant of voluntary manslaughter inasmuch as the verdict of the jury is contrary to the law and the evidence. In the opinion of the defense, this is a case in which the defendant legitimately exercised the right of self-defense. We have examined the evidence carefully and we do not believe that there is ground for setting aside the verdict returned by the jury. According to the testimony of the two eyewitnesses, Cándido Ortiz Pérez and Cipriano Cruz, on

March 12, 1933, between about one and two o'clock in the afternoon, the victim, Antonio Mercado, was going along the highway on horseback and, upon reaching the house of Cándido Ortiz Pérez, he stopped, without dismounting, to talk to Ortiz who was in his house, on the very edge of the highway. A few minutes later, the defendant-appellant also passed on horseback and when he saw Mercado talking to Ortiz he called to him and said: "What about that little thing I asked you to get me?" Then Mercado went toward him and answered: "Go get it if you like and, if not, leave it." Then other words were exchanged which the witnesses did not hear. At this point some discrepancy is noted between the eyewitnesses, since, while Cándido Ortiz Pérez states that immediately after the words, the two got off their horses and attacked each other with their fists, the other eyewitness, Cipriano Cruz, asserts that Mercado, upon approaching the defendant, swung at him from his horse, and it was then that they got off the horses and began to fight with their fists. At this moment Mercado seized a machete which the defendant had in one of his saddle bags, and struck the defendant, wounding him in one of his arms. Then Torres advanced, grasped Mercado, and threw him to the ground. When they were both on the ground the eyewitnesses, Cándido Ortiz and Cipriano Cruz ran toward them, took the machete away from Mercado, and helped both of them to their feet. After he was on his feet, the defendant put his hand in the pocket of his trousers and drew out a curved knife. Mercado fled towards the rear of Ortiz' house, and the defendant pursued him, armed with his knife. Mercado ran behind the house, where there is a wire fence. There he found and picked up a piece of kindling wood used for cooking, but the defendant, who had caught up with him, stabbed him twice with the knife that he was carrying, before the two witnesses could prevent it. One of these wounds, fourteen inches long, caused the death of Mercado a few days after he was wounded, as a result of acute peritonitis. The wit-

ness Cipriano Cruz, who is the more favorable to the defendant, states that when Antonio Mercado arose,.he started to run in the direction of the kitchen of Cándido Ortiz and that there he took a stick in his hand and came towards Celestino Torres, and that then the latter wounded him. He adds that Mercado did not strike Celestino with the stick because Cándido Ortiz was between them and that he did not see him strike after Torres drew away. The wound, according to this witness, was inflicted from the front. The defendant does not say that he ran after the victim. He testifies that he tried to run, that he ran a little, and saw that Mercado was going to strike him and then he stopped and grasped him; that they ran a distance of about twelve yards from where they were and that then Cándido Ortiz intervened, took the machete away from Mercado and threw it away, and that they were prevented from fighting any more; that he did not take the knife out then; that they came between them and he, Mercado, ran to the house of Cándido Ortiz and picked up a stick in the yard; that then he tried to run away but, as he was wounded, he could not do so; that Mercado approached him and struck him with the stick and it was after he was struck that he took out the knife and stabbed him.

This is the evidence which the jury had under consideration. The testimony of Cándido Ortiz shows that Mercado fled and that he was pursued by the defendant to a point behind the kitchen of the witness where there was a wire fence. The fact that the victim made use of a stick upon reaching the said fence where he stopped, because he could not pass there, as both eyewitnesses testify, does not show that the defendant acted in self-defense. Cipriano Cruz did not see that Mercado struck Celestino with the stick, either when Cándido Ortiz was between them or when he drew away, although he says that Mercado came towards Celestino Torres when the latter was pursuing him. This witness says, when closing his testimony and in answer to the questions of the district attorney, that he saw Antonio Mercado running

towards the kitchen of Cándido Ortiz where he stopped because he could run no farther due to the wires there; and that it was there, behind the kitchen, that he got the stick. Questioned by the defense, he says that there were some wires and that the doors of the kitchen were open and that a person could enter there and go from one place to another.

Celestino Torres says that he took out the knife when Mercado approached him and struck him with the stick, which is in conflict with the testimony of the eyewitnesses who saw the defendant run after Mercado, knife in hand, until he inflicted the wounds which caused his death.

After examining the evidence on which the verdict of the jury is based, we are of opinion that the verdict should be sustained and the judgment appealed from affirmed.