**The PEOPLE OF the TERRITORY OF GUAM, Plaintiff/Appellee,**

v.

**Jae Hung YANG, Defendant/Appellant.**

**No. 85–1252.**

United States Court of Appeals, Ninth Circuit.

Submitted March 24, 1986.*

Decided Sept. 25, 1986.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 3(f).

Vance J.I. Guerena, Asst. Atty. Gen., Agana, Guam, for plaintiff/appellee.

Howard Trapp, Trapp & Untalan, Agana, Guam, for defendant/appellant.

Before FERGUSON, CANBY and HALL, Circuit Judges.

CANBY, Circuit Judge:

Jae Hung Yang appeals the decision of the Appellate Division of the District Court of Guam affirming his conviction for kidnapping and first degree criminal sexual conduct. Yang challenges the trial court's jury instructions. We have jurisdiction pursuant to 48 U.S.C.A. § 1424–3(c) (Supp. 1985). We affirm.

## FACTS

On July 12, 1982, Jae Hung Yang was indicted for kidnapping and first degree criminal sexual conduct in violation of 9 Guam Code Ann. § 22.20(a)(2) and 9 Guam Code Ann. §§ 25.15(a)(6) & (b). Yang was tried by jury in the Superior Court of Guam. At the conclusion of trial, the trial court gave the jury the following instruction concerning the nature of reasonable doubt:

> The test is one of reasonable doubt. And reasonable doubt is a doubt that's based upon common sense and reason and it's a kind of doubt that would make a reasonable person hesitate to do a certain act. Proof beyond a reasonable doubt, therefore, is prove [sic] of such a convincing character that would make a reasonable person, without hesitation, rely and act upon it in the most important of his or her own affairs.

The trial court also gave the following instruction concerning the weighing of conflicting evidence:

> As jurors you are not bound to decide in conforming [sic] with the number of wit-

nesses [sic] which doesn't produce a conviction in your mind as against the testimony of lesser number. There are [sic] other evidence which appeals to your mind with more convincing force. This doesn't mean you're at liberty to disregard the testimony of the greater number of witnesses merely from caprice or prejudices or from a desire to favor one side or the other, as against the other. But it does not mean that you're not to decide an issue by a simple process of counting the number of witnesses who have testified on the opposing side. *It simply means that the final test is not in the relative number of witnesses, but in the relative convincing force of the evidence.*

(Emphasis added.) Yang did not object contemporaneously to either instruction.

Following conviction on both kidnapping and criminal sexual conduct counts, Yang appealed to the Appellate Division of the District Court of Guam. Yang alleged that the trial court's jury instructions were erroneous under Guam law.[1] The District Court affirmed Yang's conviction relying on, inter alia, this court's decision in *Guam v. Ignacio*, 673 F.2d 1339 (9th Cir.1982). Yang now appeals.

## DISCUSSION

### I. *Standard of Review*

When reviewing the District Court of Guam's constructions of local law, we must affirm the District Court's determinations "if they are based upon a tenable theory and are not manifestly erroneous." *Laguana v. Guam Vistors Bureau*, 725 F.2d 519, 520 (9th Cir.1984) (quoting *Chase Manhattan Bank v. Gems-by-Gordon*, 649 F.2d 710, 712 (9th Cir.1981)). *See also Electrical Construction & Maintenance Co. v. Maeda Pacific Corp.*, 764 F.2d 619, 620 & n. 1 (9th Cir.1985).

---

1. Yang does not contend that the trial court's instructions violated the federal due process requirement that guilt be proven beyond a reason-

able doubt. *See In Re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

## II. *Reasonable Doubt Instruction*

Yang contends that the district court erred in finding that the instructions on reasonable doubt given by the trial court did not constitute plain error. He argues that because the Guam provision defining reasonable doubt, 8 Guam Code Ann. § 90.23 (1980) is modeled on Cal. Penal Code § 1096 (West 1977), California case law strictly interpreting Cal. Penal Code § 1096 controls the construction of 8 Guam Code Ann. § 90.23. We reject this argument.

■ Although "[a]bsent controlling Guam authority ... it [is] appropriate to look to California law for guidance," *Smith v. Lujan*, 588 F.2d 1304, 1306 (9th Cir. 1979), there is no need in the present case to look beyond the decisions of the Guam courts. In *Guam v. Hilton*, Cr.App. No. 82-00055A (D.Guam App.Div.1984), *aff'd*, 760 F.2d 276 (9th Cir.1985) (unpublished memorandum), the Appellate Division of the District Court of Guam held that section 90.23 permitted trial judges to vary from the reasonable doubt instruction set forth in subsection (a). In *Guam v. Ignacio*, Cr.App. No. 79-00036A (D.Guam App. Div.1980), *aff'd*, 673 F.2d 1339 (9th Cir. 1982), the District Court approved a reasonable doubt instruction nearly identical with the one given by the trial court in this case.

**2.** Although neither has been published, we are satisfied that *Hilton* and *Ignacio* constitute authoritative statements of Guam law to which we must defer. Unlike this circuit, the Guam courts afford the same respect to published and unpublished decisions. *Hilton* and *Ignacio* are both designated "Opinion" and lack any indication that they may not be cited in the courts of Guam. Furthermore, the rules of the District Court of Guam Appellate Division contain no provision analogous to 9th Cir.R. 21 which prohibits the citing of unpublished decisions in the courts of this circuit. Indeed, the Appellate Division's rules, insofar as they address the issue, suggest that simple filing is sufficient to make an opinion citable. *See* Dist.Ct.R.App.P. 22 (opinions shall be filed with the clerk of the district court "for preservation" and when filed, "shall be deemed to be recorded"). Absent a provision like 9th Cir.R. 21 mandating the contrary, we conclude that a court's decision, whether published or not, states the law of its jurisdiction.

Yang does not attempt to distinguish these cases. They control.[2]

## III. *Weighing of Conflicting Evidence Instruction*

■ Yang next asserts that the trial court's instruction on the weighing of conflicting evidence was plain error. Yang argues that by directing the jury that "the final test is ... the relative convincing force of the evidence," the trial court contradicted its earlier instruction concerning the requirement of proof beyond a reasonable doubt. Contradictory or confusing instructions, Yang concludes, are grounds for reversal.

We disagree. The trial court's latter statement did not contradict its earlier instruction.

First, the trial court clearly established that the challenged statement was made in a context distinct from its earlier discussion of reasonable doubt. Having concluded its definition of reasonable doubt, the trial court declared, "And now we come to the question of credibility." Thus, we find it is unlikely that the jury misinterpreted the trial court's latter statement as redefining the nature of reasonable doubt.

Second, considered in context, the challenged statement merely asserted a truism about the importance of credibility. Rath-

Finally, we note that just as we must defer to the Guam courts' interpretations of their substantive law, so we must defer to their understandings of what constitutes their decisional law. The Appellate Division relied on both *Hilton* and *Ignacio*. Its reliance on unpublished opinions was both tenable under its rules and consistent with the practice of Guam courts. *See Lewis v. Lewis*, 1 Gaum 235, 241 (D.Guam App.Div.1974) (Benson J., concurring) (describing unpublished case as "decisional restraint"); *Guam Music, Inc. v. Manibusan*, 1 Gaum 591, 592 (Sup.Ct.Guam 1979) (citing unpublished Guam decision); *Guam v. Rico*, 1 Guam 586, 588. (Sup.Ct.Guam 1979) (same); *Guam v. Aguon*, 1 Guam 306, 306 (Sup.Ct.Guam 1976) (noting that "courts of lower rank cannot deviate from precedents established by courts which possess appellate jurisdiction over same," court relies on unpublished decision). We defer to the Appellate Division's treatment of its unpublished decisions as authoritative.

er than instructing the jury on the proper *degree* of belief—beyond a reasonable doubt—the challenged statement instructed the jury on the proper *basis* of belief— "convincing force." Having remarked "you're not to decide an issue by a simple process of counting the number of witnesses on the opposing side," the trial court stated the correct basis for deciding an issue: " ... the final test is not in the relative number of witnesses, but in the relative convincing force of the evidence." The point of the challenged statement is simply that beliefs should be based on the convincing force of the evidence, not the number of witnesses. We find this statement neither confusing nor objectionable.

### CONCLUSION

The trial court's earlier instruction on the nature of reasonable doubt was a permissible formulation of the government's burden of proof, at least in the absence of objections. This instruction was neither contradicted nor obfuscated by the trial court's later statement concerning the weighing of conflicting evidence. Thus, the District Court did not err in finding that the trial court's instructions did not constitute plain error.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

I dissent because the Appellate Division of the District Court of Guam based its decision on the erroneous belief that two Ninth Circuit unpublished memorandum dispositions controlled this case. Moreover, I do not believe that the Appellate Division specifically decided that it was bound by the previous Appellate Division's decisions; nor could these previous decisions bind the Appellate Division. Thus, the district court and the majority erred in affirming Yang's conviction without considering the merits of whether the reasonable doubt jury instruction's deviation from the Guam Legislature's definition of reasonable doubt constituted reversible error.

### I.

I disagree with the majority's conclusion that the Appellate Division relied on its prior decisions in concluding that it was bound by prior case law. The court stated:

While Judge Ferguson sets forth an appealing argument [in dissent in *Guam v. Ignacio*, [673 F.2d 1339] No. 81–1107 (9th Cir. Feb. 19, 1982) ], the decisions of this Court in *Ignacio* and *Hilton* and of the Ninth Circuit in *Ignacio* have held otherwise. This panel must affirm based on these previous decisions. Any change in the decisions in this line of cases should more properly come from the Ninth Circuit.

*Guam v. Yang,* Cr.App. No. 84–0005A, slip op. at 7 (D.Guam App.Div. July 24, 1985) (citing *Guam v. Hilton,* Cr.App. No. 82–00055A (D.Guam App.Div.1984), *aff'd,* 760 F.2d 276 (9th Cir.1985) (mem.); *Guam v. Ignacio,* Cr.App. No. 79–00036A (D.Guam App.Div.1980), *aff'd,* 673 F.2d 1339 (9th Cir.1982)).

My reading of the opinion is that the court felt bound by the Ninth Circuit's unpublished affirmances of those decisions, rather than the decisions themselves. This conclusion is underscored by the court's belief that only this court can change the law of this circuit. Furthermore, the Appellate Division apparently would otherwise have found that the instruction was reversible error.

I contend that we must reverse because the Appellate Division thought that the Ninth Circuit's unpublished decisions were controlling. The Ninth Circuit prohibits citing or using unpublished memorandum dispositions:

A disposition that is not for publication shall not be regarded as precedent and shall not be cited to or by this Court or any district court of the Ninth Circuit, either in briefs, oral argument, opinions, memoranda, or orders, except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.

9th Cir.R.21(c). Thus, these prior Ninth Circuit memorandum decisions have no precedential authority. *See Demarest v.*

*United States,* 718 F.2d 964, 967–68 (9th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984); *United States v. Kinsley,* 518 F.2d 665, 670 n. 10 (8th Cir.1975); *United States v. Fox,* 473 F.2d 131, 136 n. 11 (D.C.Cir.1972). The Appellate Division therefore erred in presuming itself bound by Ninth Circuit law on how to treat these jury instructions.

The more difficult issue is whether the Appellate Division was bound by the prior Appellate Division decisions in *Hilton* and *Ignacio.* I believe that the district court chose not to address this issue fully because it felt bound by our decisions. The court looked to the Ninth Circuit to overturn these incorrect—albeit unpublished—interpretations of Guam law. It must not have realized that the Ninth Circuit cannot establish Guam law; the Appellate Division is the final arbiter of Guam law. At the very least, this court should remand to the Appellate Division to clarify the grounds on which it based its rejection of the defendant's arguments.

I believe that the Appellate Division gives no precedential effect to unpublished decisions.[1] A district court does not; even a published district court opinion is only persuasive authority to other district courts. *See Starbuck v. City & County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another."); 1b J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.402[1], at 16 & n. 21 (2d ed. 1984).[2] Moreover, many reasons militate against making unpublished decisions binding on future courts.

First, to give precedential effect to unpublished decisions violates fundamental principles of judicial decisionmaking. This category of decisions, like Ninth Circuit memorandum dispositions, are not written to pronounce the law of the jurisdiction. These briefer decisions are written to inform the parties of the reasons for the decision, not to serve as guidance for future judicial decisionmaking; extensive and elaborate reasoning, narrowly tailored holdings, and precise language are notably absent from them.

Second, permitting unpublished decisions to control would create the worst sort of judicial confusion. Instead of access for all individuals to the law, the result would be chaos. Only the most elaborate system would permit any law firm, let alone a sole practicer, to keep abreast of *every* decision. One of the greatest features about the law is that anyone may walk into a public law library and almost instantly learn of every controlling decision on a given issue. If unpublished decisions became controlling, legal research as we know it would end, and only the most wealthy—those who could afford a permanent law clerk stationed in every clerk's office—would be able to litigate the great issues of our day.

Third, I question whether the Appellate Division has the power to create such a rule. Although the Appellate Division functions as a Guam court substantially, it remains a district court for procedural matters. Consequently, it cannot ignore the Federal Rules of Evidence or the Federal Rules of Civil Procedure. The law is clear that an unpublished district court decision has no precedential authority. *See Hupman v. Cook,* 640 F.2d 497, 501 (4th Cir. 1981) (unpublished district court decision and unpublished appellate court affirmance have no precedential effect); *see also Connecticut State Federation of Teachers v. Board of Education Members,* 538 F.2d 471, 485 (2d Cir.1976) (unpublished state court decisions not binding). I therefore

---

1. To the extent that the Appellate Division is the final arbiter of Guam law, it is like a state supreme court. State supreme courts generally give their previous opinions stare decisis effect, but are not bound to follow them.

2. Of course, district courts may ensure uniformity in the district by conducting limited or full en banc proceedings on important cases or by requesting other judges join in a single opinion. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3505, at 17–18 (2d ed.1984).

believe that the Appellate Division could not make unpublished decisions controlling.

The majority cites several Guam cases in which the court used prior unpublished decisions as authority. *See* maj. op. at 947. However, with one exception, these cases do not hold that the unpublished opinions were binding. Rather, I believe these cases found the unpublished decisions to be persuasive authority.[3]

Thus, I believe that the district court erred in finding that it was bound by prior Ninth Circuit and District of Guam law, because there was none as such. The question that remains, however, is whether these unpublished decisions correctly interpret Guam law, and thus properly be considered persuasive authority. The Appellate Division certainly has the right to give persuasive authority to its previous decisions. However, I believe that these prior decisions fundamentally misinterpret the intent of the Guam Legislature, and should not be used as a guide in this case.

## II.

The Guam Legislature has adopted a reasonable doubt definition that the jury instruction given in this and the two previous Appellate Division cases completely contradicts. Views differ sharply from one jurisdiction to another as to what constitutes an adequate and permissible jury instruction on reasonable doubt and the prosecution's burden of proof in a criminal case. Within limitations imposed by the United States Constitution, the resolution of these differences is a matter of local law. In the present case, the trial court gave an instruction that is erroneous under Guam law and that must be treated as reversible error.

Different jurisdictions in the United States generally employ one of three distinct approaches to defining reasonable doubt for the jury. Some jurisdictions, including most federal courts, equate reasonable doubt with that doubt which would make a reasonable person hesitate to act. *See, e.g., Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954); *United States v. Robinson,* 546 F.2d 309, 313 (9th Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977); 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 11.14 (3d ed. 1977). A second approach defines proof beyond a reasonable doubt as proof to a "moral certainty." *See, e.g., People v. Garcia,* 54 Cal.App.3d 61, 63, 126 Cal.Rptr. 275, 276 (1975), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976); 1 CALJIC No. 2.90 (4th ed.1979). A third approach is to give no definition at all. *See, e.g., Claussen v. State,* 21 Wyo. 505, 133 P. 1055, 1056 (1913); *see also People v. Brigham,* 25 Cal.3d 283, 311 & n. 16, 599 P.2d 100, 117–18 & n. 16, 157 Cal.Rptr. 905, 922–23 & n. 16 (1979) (Mosk, J., concurring) (listing cases).

Jurisdictions that follow one of these approaches may disapprove of the others. *See, e.g., People v. Bemmerly,* 87 Cal. 117, 120–21, 25 P. 266, 267–68 (1890) (rejecting as erroneous an instruction that defined reasonable doubt as "such a doubt as would induce a man of reasonable firmness and judgment to act upon it in matters of importance to himself"); *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820, 828 (1954) ("We are of the opinion that the use of the words 'moral certainty' serves to confuse and befog the jury instead of enlightening and aiding them in determining whether the Commonwealth has convinced them of the guilt of the defendant beyond a reasonable doubt, and that in the future it would be wiser if the charge did not contain any reference to 'moral certainty.' ").

---

**3.** The one case that the majority cites implying that an unpublished decision is binding precedent is distinguishable. *Guam v. Aguon,* 1 Guam 306, 306 (Super.Ct.Guam 1976). First, that case is a superior court case and its interpretation of Guam law does not carry the same effect as decisions of the Appellate Division. Second, that case was in a different posture than the present case. That a lower court is bound by an unpublished decision of a higher court does not mean that the Appellate Division is bound by its own unpublished decisions. Third, I believe that the decision is simply incorrect.

The Guam Legislature has chosen the second approach. Guam Crim.Proc.Code § 90.23(a) defines reasonable doubt as "that state of the case, which ... leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." This definition is identical to that contained in 1 CALJIC No. 2.90 (4th ed. 1979), which in turn is identical to the definition found in Cal.Penal Code § 1096.[4] The Guam Legislature, as much as it California counterpart, has the right to incorporate this definition of reasonable doubt into its criminal justice system, and to require that instructions to the jury in a criminal case convey the meaning embodied in the statutory definition. However, the statute does not, by its terms, require that the jury be instructed in its exact language. Instead, like the California statute, it provides simply that the court may use the statute's language, and that if it does so by reading section 90.23(a) to the jury, "no further instruction defining reasonable doubt need be given." Guam Crim.Proc.Code § 90.23(b); *see also* Cal.Penal Code. § 1096a.

Rather than rely on the statutory definition, the trial judge in this case gave an instruction based on the standard federal instruction, 1 E. Devitt & C. Blackmar, *supra,* § 11.14.[5] The instruction given was, in pertinent part, as follows:

> Reasonable doubt is a doubt that's based upon common sense and reason, and it's the kind of doubt that would make a reasonable person sort of [sic] hesitate to do a certain act. Proof beyond a reasonable doubt therefore is proof of such a convincing character that would make a reasonable person without hesitation rely and act upon it in the most important of his or her own affairs.

This instruction differs markedly from the Guam statute. The question is whether it still conveys adequately the meaning embodied in the statute and pays sufficient respect to the judgment of the Guam Legislature.

No reported case has considered whether the doubt instruction given is reversible error in a Guam criminal case. We are therefore forced to turn to other jurisdictions for guidance. When "there is a question concerning the criminal or civil provisions of Guam law, this court will rely on California law." *Guam v. Ojeda,* 758 F.2d 403, 406 (9th Cir.1985).

California case law is particularly relevant because the statutory development is identical to that of Guam. Until 1927, California had no statute defining reasonable doubt, and trial judges often fashioned their own definitions.

A variety of such formulations were tried, but with mixed success. In a number of cases the definition, although intended to help the jury understand the principle of proof beyond a reasonable doubt, had the unintended effect of weakening or nullifying the principle itself, and hence was prejudicially erroneous. Reversing the ensuing convictions, [the California Supreme Court] chose not to prohibit or even to discourage trial judges from enlarging upon the statutory principle; rather, the court urged them to instruct in terms of a particular

---

**4.** The full definition in all three sources, is: Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

**5.** The language in Devitt & Blackmar is as follows:

> It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.

definition of reasonable doubt that had received widespread judicial approval, i.e., the definition proposed by Chief Justice Shaw of Massachusetts in the case of *Commonwealth v. Webster*, (1850) 59 Mass. [ (5 Cush.) ] 295, 320. *People v. Brigham*, 25 Cal.3d 283, 294, 599 P.2d 100, 106–07, 157 Cal.Rptr. 905, 911–12 (1979) (Mosk, J., concurring). In 1927, the Commission for the Reform of Criminal Procedure recommended that the California Legislature "remove all doubts and uncertainties on this subject, and provide a clear statement of the law which can be given in every case and to which nothing need be added." *Id.* at 294, 599 P.2d at 107, 157 Cal.Rptr. at 912 (quoting *Cal.Comm. for Reform of Crim.Proc., Rep. to Leg.* 20 (1927)). The legislature responded by enacting Cal. Penal Code § 1096, which enshrined Justice Shaw's language, already warmly endorsed for half a century by the California Supreme Court. That same language is now in the Guam statute defining reasonable doubt.

In the years since Cal. Penal Code § 1096 was enacted, variations from the statute have met with sharp disapproval by the California appellate courts. That language "has with near, if not complete, universality been accepted as the best definition of the concept of proof beyond a reasonable doubt. Well intentioned efforts to 'clarify' and 'explain' these criteria have had the result of creating confusion and uncertainty, and have repeatedly been struck down by the courts of review of this state." *People v. Garcia,* 54 Cal.App.3d 61, 63, 126 Cal.Rptr. 275, 276 (1975), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976).

If a California trial court gave the instruction used here, reversal would be required. *People v. Bemmerly,* 87 Cal. 117, 25 P. 266 (1890), involved a similar instruction. The trial court defined a reasonable doubt as "such a doubt as would induce a man of reasonable firmness and judgment to act upon it in matters of importance to himself." *Id.* at 121, 25 P. at 267 (emphasis omitted). The California Supreme Court, holding that this instruction was error, reversed. *Id.* at 121, 25 P. at 268.

I see no relevant difference between the language used below and the language used in *Bemmerly.* The *Bemmerly* language echoes the Devitt and Blackmar instruction by defining doubt in terms of the behavior of a reasonable person in important affairs, rather than in terms of the state of mind associated with the absence of reasonable doubt ("moral certainty"). I am certain that if the present case had arisen in California, *Bemmerly* would have compelled reversal.

In recent years, the California Supreme Court has criticized the language of Cal. Penal Code § 1096. *See People v. Brigham,* 25 Cal.3d 283, 292, 599 P.2d 100, 106, 157 Cal.Rptr. 905, 911 (Mosk, J., concurring) ("[I]t is time we also acknowledge the ... glaring deficiencies of the definition of 'reasonable doubt' given to the jurors as part of CALJIC No. 2.90."); *id.* at 290 n. 11, 599 P.2d at 104 n. 11, 157 Cal.Rptr. at 909 n. 11 (majority opinion) ("The author of the concurring opinion is correct when he criticizes the standard definition of reasonable doubt contained in CALJIC No. 2.90. The Legislature should be encouraged to clarify this important area of the law."). Significantly, however, that court has not felt at liberty to cast aside the CALJIC No. 2.90 language without legislative action. Faced with the identical statute in Guam, we should take our cue from the California Supreme Court and recognize that, however much we may disagree with the judgment the statute expresses, and however strongly we may be inclined to side with those jurisdictions that reject the "moral certainty" language, it is neither the duty nor the right of this court to substitute its judgment for that of the Guam Legislature.

### III.

The jury instruction in this case represents a departure from the judgment of the Guam Legislature as to the best approach to defining reasonable doubt in a criminal

case. The importance of that definition cannot be overstated.

The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." [citations omitted]....

.... The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.

*In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

We are asked today to affirm a conviction based on a verdict of guilty returned by a jury using an instruction that would be reversible error in some jurisdictions and in contravention of the Guam Legislature. I am bound to defer to the judgment of the Guam Legislature. That legislature has passed a statute defining reasonable doubt in terms radically different from those used by the trial judge. "[U]se of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law." *Id.* at 364, 90 S.Ct. at 1073. The prior Guam decisions threaten to undermine that respect and confidence to the extent that it appears simply to disregard relevant enactments of Guam's Legislature, and to the extent that it suggests that a person can be convicted of a crime by a jury misinformed as to the proper standard of proof. I would reverse the conviction.