The PEOPLE OF the TERRITORY OF
GUAM, Plaintiff–Appellee,

v.

Jae Hung YANG, Defendant–Appellant.

No. 85–1252.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 17, 1988.

Decided June 20, 1988.

Howard Trapp, Trapp and Untalan, Agana, Guam, for defendant-appellant.

Vance J.I. Guereno, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before WALLACE, TANG, PREGERSON, FERGUSON, NELSON, REINHARDT, WIGGINS, KOZINSKI,

NOONAN, THOMPSON, and
O'SCANNLAIN, Circuit Judges.

FERGUSON, Circuit Judge:

Jae Hung Yang was indicted on July 12, 1982 for kidnapping and first degree criminal sexual conduct, in the territory of Guam. At the conclusion of his trial in the Superior Court of Guam, the trial court instructed the jury on reasonable doubt, giving an instruction that differed from the one set out in the Guam Criminal Procedure Code § 90.23(a).[1] Following his conviction on both counts, Yang appealed to the Appellate Division of the District Court of Guam, alleging, *inter alia,* that the reasonable doubt instruction given by the trial court was erroneous under Guam law. The Appellate Division upheld Yang's conviction, relying on its own unpublished decisions as well as unpublished decisions of this court. A divided three-judge panel of this circuit subsequently affirmed the decision, giving substantial deference to the Appellate Division's interpretation of Guam law. *Guam v. Yang,* 800 F.2d 945 (9th Cir.1986), *opinion withdrawn by,* 833 F.2d 1379 (9th Cir.1987). Rehearing *en banc* was granted to determine: (1) the appropriate standard of review for interpretations of Guam law made by the Appellate Division; (2) whether the courts of Guam may properly rely on unpublished decisions of this court; and (3) whether the reasonable doubt instruction given by the trial court was sufficient under Guam law.[2] We have jurisdiction pursuant to 48 U.S.C. § 1424-3(c).

### I.

The three-judge panel of this court that initially heard Yang's appeal applied a deferential standard of review to the Appellate Division's construction of local law. It held that the decisions of the Appellate Division must be affirmed "if they are based upon a tenable theory and are not manifestly erroneous." *Yang,* 800 F.2d at 946. We disagree. The statutory scheme establishing the system of courts in Guam, 48 U.S.C. §§ 1421 et seq., and the reasoning of our decision in *Matter of McLinn,* 739 F.2d 1395 (9th Cir.1984) (en banc), compel the adoption of a strict de novo standard of review for determinations of Guam law by the Appellate Division. Moreover, the use of this standard would be consistent with the Third Circuit's treatment of a similar system of courts in the Virgin Islands. *See Saludes v. Ramos,* 744 F.2d 992 (3d Cir.1984).

The statute establishing the role of the federal courts in Guam provides that, until such time as Guam establishes its own appellate court, all appeals from local courts—including the Superior Court of Guam—are to be heard by a three-judge panel serving as the Appellate Division of the District Court of Guam. 48 U.S.C. § 1424-3. The presiding judge of the Appellate Division must be a local district court judge, who in turn designates the two remaining judges from among the judges either serving on or assigned to the district court. *Id.*[3] This pool of eligible judges

---

1. Section 90.23(a) defines reasonable doubt as follows: It is not a mere possible doubt because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the trier of fact in that condition that he cannot say he feels an abiding conviction to a moral certainty, of the truth of the charge.

2. The issues considered herein do not alter the decision of the Appellate Division regarding the trial court's instruction on the weighing of conflicting evidence. Thus, the decision of the court as to that instruction is not changed.

3. Appeals to the District Court of Guam shall be heard and determined by an appellate division

of the court consisting of three judges, of whom two shall constitute a quorum. The district judge shall be the presiding judge of the appellate division and shall preside therein unless disqualified or otherwise unable to act. The other judges who are to sit in the appellate division of any session shall be designated by the presiding judge from among the judges who are serving on, or are assigned to, the district court from time to time pursuant to section 1424b of this title: *Provided,* That no more than one of them may be a judge of a court of record of Guam. The concurrence of two judges shall be necessary to any decision of the appellate division of the district court on the merits of an appeal, but the presiding judge alone may make any appropriate orders with respect to an appeal prior to the hearing and determination

includes district court judges from outside Guam.[4]

In this case, only the Presiding Judge is a local judge. The other two judges are not from Guam. In such situations there is simply no basis for assuming that visiting judges—even when from the nearby Northern Mariana Islands—have any greater familiarity with local Guam law and/or custom than do the judges of this court who hear the subsequent appeals. Thus, deference to the Appellate Division's determinations of local law is unwarranted.[5]

Moreover, Congress has specifically required that relations between the federal courts and Guam's local courts be the same as those between the federal and state courts. 48 U.S.C. § 1424-2.[6] Our reasoning in *Matter of McLinn* is thus instructive here. In *McLinn*, we held that interpretations of state law by local district court judges would be reviewed de novo. That holding was based in part on the recognition that the Ninth Circuit's determination of state law issues has substantial precedential value. 739 F.2d at 1401 ("de novo review of questions of law is dictated in part because of the precedential effect of those questions on future litigants. While the trial courts' factual determinations bind only the parties, the determination of legal issues affects the rights of future litigants."). Since interpretations of Guam law by this court and the United States Supreme Court are the only published precedent for the Appellate Division of Guam, they carry even greater weight than do federal court interpretations of state

law, which are binding on only the federal courts and not on state (local) courts.

We also noted in *McLinn* that the use of a deferential standard assumes that the judge making the determination "has some particular knowledge or experience in the field of law [at] issue." *Id.* at 1400. We found that this assumption invites exploration into the judge's actual experience which is neither a proper nor efficient part of the decisional process. *Id.* Such an inquiry would be equally inappropriate in determining the level of deference to be accorded decisions of Guam's Appellate Division.

Moreover, adopting de novo review is preferable here because it prevents our applying a standard of review in conflict with that applied by the Third Circuit in its review of Appellate Division decisions of the District Court of the Virgin Islands. The Third Circuit, after specifically considering and rejecting a deferential standard of review, concluded that de novo review was required for questions of local law. *Saludes v. Ramos*, 744 F.2d at 994 (while "[t]he district court's reading of local law should be respected ... we will not accord it any greater deference than we would in a diversity action."). Since the statutory provisions establishing the judicial system in the Virgin Islands—and thus the function of the district courts and the rules for determining the composition of its Appellate Division—are virtually identical to those establishing the Guam courts, *compare* 48 U.S.C. § 1613a, *with*, 48 U.S.C. § 1424-3, a uniform standard of review for both courts would be appropriate.[7]

---

thereof on the merits and may dismiss an appeal for want of jurisdiction or failure to take or prosecute it in accordance with the applicable law or rules of procedure.
48 U.S.C. § 1424-3(b) (emphasis in original).

4. Until Guam establishes its own appellate court, this court shall serve as Guam's "Supreme Court", hearing appeals arising from the Appellate Division. 48 U.S.C. § 1424-3(c).

5. In fact, it arguably could be an abdication of our responsibility as a reviewing court to give any degree of deference to determinations of local law when they are decided by a panel whose majority hails from other jurisdictions.

6. Section 1424-2 provides in relevant part:
The relations between the courts established by the Constitution or laws of the United States and the local courts of Guam with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings....

7. The First Circuit, in reviewing decisions of the U.S. District Court sitting in Puerto Rico, applies

Thus, based on the statutory indicia, our reasoning in *McLinn,* and the treatment given by other circuits to the decisions of district courts in other territories, we hold that the proper standard of review for questions of law is a de novo standard, which accords no deference to interpretations of local law by the Appellate Division of the District Court of Guam.

## II.

■ The Appellate Division indicated in its opinion that, in reviewing the propriety of the reasonable doubt instruction given at Yang's trial, it was bound by two of its unpublished decisions and this Circuit's unpublished affirmance of those decisions. Because the Appellate Division concluded that these decisions were controlling, it failed to look beyond them for guidance in determining the sufficiency of the instruction. We hold that the courts of Guam may not rely on unpublished decisions of this court.

■ The Ninth Circuit prohibits the citation or use of its unpublished memorandum dispositions:

Any disposition that is not an opinion or an order designated for publication under Circuit Rule 36–5 shall not be regarded as precedent and shall not be cited to or by this court or any district court of the Ninth Circuit, either in briefs, oral argument, opinions, memoranda, or orders, except when relevant under the doctrines

of law of the case, res judicata, or collateral estoppel.

9th Cir. R. 36–3. Thus, unpublished decisions of the Ninth Circuit have no precedential authority.

The Appellate Division therefore erred in relying on a Ninth Circuit unpublished decision in deciding this case. In particular, it erred in its determination of the propriety under Guam law of the reasonable doubt instruction given at Yang's trial.

## III.

■ The trial court twice defined reasonable doubt for the jury.

The test is one of reasonable doubt. Reasonable doubt is a doubt that based upon common sense and reason, and it's the kind of doubt that would make a reasonable person sort of hesitate to do a certain act. Proof beyond a reasonable doubt therefore is proof of such a convincing character that would make a reasonable person without hesitation rely and act upon it in the most important of his or her own affairs.

and,

The test is one of reasonable doubt. And reasonable doubt is a doubt that based upon common sense and reason and it's a kind of doubt that would make a reasonable person hesitate to do a certain act. Proof beyond a reasonable doubt, therefore, is prove [sic] of such a convincing character that would make a reasonable person, without hesitation, rely and act

a more deferential standard to a district court's interpretation of local law. *Gual Morales v. Hernandez Vega,* 604 F.2d 730, 732 (1st Cir. 1979). This deference, however, appears attributable to the fact that Puerto Rico has an independent judicial system with a body of "state" law determined by its own appellate and supreme courts. Thus, the district court for the District of Puerto Rico does not serve an appellate function, but is solely a court of original jurisdiction, subject to the same jurisdictional requirements as all other judicial districts in the federal system. *See* 28 U.S.C. §§ 119, 132(a). In addition, the district judges in Puerto Rico are generally "citizens of Puerto Rico and well versed in the Spanish underpinnings of Puerto Rican law." *Id.* (citations omitted).

Prior to *McLinn,* in reviewing decisions of the Appellate Division for the Northern Mariana Islands—a court similar in its design and function to the Appellate Division of Guam, see 48 U.S.C. § 1694b—this circuit has given some deference to decisions by that court. See *Camacho v. Civil Service Comm'n,* 666 F.2d 1257 (9th Cir.1982). However, our more recent decisions have noted the uncertainty within the Circuit as to the proper standard of review, thus indicating the necessity of clarifying the correct standard of review for decisions of commonwealth and territorial appellate divisions. *See Bank of Guam v. Demapan,* 839 F.2d 1344, 1345–46 (9th Cir.1988); *Marianas Pub. Land Trust v. Govt. of the N. Mariana Islands,* 838 F.2d 341, 344–45 (9th Cir.1988).

upon it in the most important of his or her own affairs.

These definitions are based on the standard federal instruction, taken from 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions*, § 11.14. Since this instruction differs markedly from the one set forth in the Guam Code, the question before us is whether the instruction given by the trial court nonetheless adequately conveys the meaning embodied in the statute, and pays sufficient respect to the judgment of the Guam legislature. We conclude that it does not.[8]

The use of a reasonable doubt standard "is indispensable to command the respect and confidence of the community in applications of the criminal law." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Different jurisdictions in the United States generally employ one of three distinct approaches to defining reasonable doubt. They include the "hesitate to act" standard, widely used in the federal courts, the "moral certainty" standard, and finally the practice of refusing to provide any definition at all. *See Yang*, 800 F.2d at 950 (Ferguson, J., dissenting), and cases cited therein. Since the preferred instruction on reasonable doubt in one jurisdiction might constitute error if given in another jurisdiction, the resolution of these differences is a matter of local law.

---

8. The Guam Criminal Procedure Code provides that "no party may assign as error any portion of an instruction or omission therefrom unless he objects thereto, stating distinctly the matter to which he objects and the grounds for his objection." 8 Guam Code Annot. § 90.19(c). The Code also provides: "(a) Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded. (b) Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." 8 Guam Code Ann. § 130.50. These quoted provisions track language contained in Fed.R.Crim.P. 30 and 52. We interpret Guam's statutory provisions that track the Federal Rules of Criminal Procedure in the same way that we interpret the Federal Rules. *See Guam v. Ojeda*, 758 F.2d 403, 406 (9th Cir.1985) (discussing how to interpret Guam's Rules of Evidence that are identical to the Federal Rules of Evidence).

As a general rule, we review unobjected-to jury instructions for plain error under Fed.R. Crim.P. 52(b). *United States v. Bustillo*, 789 F.2d 1364, 1367–68 (9th Cir.1986). Guam courts should follow this general rule as well. *See Ojeda*, 758 F.2d at 406.

Nonetheless, we have previously recognized a very narrow exception to the contemporaneous objection requirement of Fed.R.Crim.P. 30. In *United States v. Scott*, 425 F.2d 55 (9th Cir.1970) (en banc), we concluded that no contemporaneous objection is required when it would have been futile in the trial court because "a solid wall of circuit authority" foreclosed the trial court from correcting its ruling. We pointed out that "were we to insist that an exception be taken to save the point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on then settled principles out of hope that those principles will be later overturned...." *Id.* at 57–58. We have consistently applied the *Scott* exception when appropriate. *See, e.g., Robinson v. Heilman*, 563 F.2d 1304, 1307 (9th Cir.1977); *United States v. Wanger*, 426 F.2d 1360 (9th Cir.1970) (per curiam); *United States v. Ingman*, 426 F.2d 973, 975–76 (9th Cir.1970); *United States v. Fueston*, 426 F.2d 785, 788 (9th Cir.1970). Other circuit courts have also adopted the *Scott* exception. *See, e.g., Smith v. Estelle*, 602 F.2d 694, 708 n.19 (5th Cir.1979), *aff'd*, 451 U.S. 454, 468 n.12, 101 S.Ct. 1866, 1876 n. 12, 68 L.Ed.2d 359 (1981); *United States v. Grant*, 489 F.2d 27, 29–30 (8th Cir. 1973); *United States v. Liquori*, 438 F.2d 663, 665 (2d Cir.1971); *Martone v. United States*, 435 F.2d 609, 610–611 (1st Cir.1970). This narrow exception only applies, of course, when a wall of binding authority squarely precludes the trial court from correcting an error in light of the objection, otherwise the exception to Fed.R. Crim.P. 30 could swallow the rule. *Cf. United States v. Lazarus*, 425 F.2d 638, 642–45 (9th Cir.), *cert. denied*, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970).

We believe that the *Scott* exception applies to the unique facts of this case. Both the government and the defense had requested an instruction in accordance with the reasonable doubt instruction contained in section 90.23(a). The trial court, however, decided to give the nonstatutory reasonable doubt instruction based on *Guam v. Ignacio*, Cr.App. No. 79–00036A (D.Guam App.Div.), *aff'd*, 673 F.2d 1339 (9th Cir.1982). In *Ignacio*, which we affirmed prior to Yang's trial, we approved the same nonstatutory reasonable doubt instruction that the trial court gave in this case. In light of our decision in *Ignacio*, the fact that Yang's trial was before the same judge who heard *Ignacio*, and Guam's erroneous practice of relying on our unpublished decisions as binding precedent, we conclude that, as in *Scott*, an objection would have been futile because the trial court would not have changed its decision. Therefore, even though defense counsel did not object contemporaneously to the trial court's instruction, we review the instruction for reversible error, rather than plain error.

Recognizing that reasonable minds may differ, the Guam legislatures elected the "moral certainty" approach to defining reasonable doubt. Guam Code Annot. § 90.23(a) (Criminal Procedure Code). The significance of its having chosen this specific approach cannot be overstated.

■ The Guam legislature clearly has both the right to incorporate such a definition of reasonable doubt into its criminal justice system, and to require that instructions to the jury in a criminal case convey the meaning embodied in the statutory definition. The statute does not, however, by its terms, *require* that the jury be instructed in its exact language. Instead, like the California statute it is rooted in, the Guam statute provides that the court "may" use the statute's language, in which case "no further instruction defining reasonable doubt need be given." Guam Code Annot. § 90.23(b); *see also* Cal.Penal Code § 1096a.[9]

In the instant case, the trial court chose not to use the statutory definition of reasonable doubt. The instruction which it gave, however, is erroneous under Guam law for several reasons. First, the language used by the trial judge defines doubt in terms of the *behavior* of a reasonable person in important affairs, rather than in terms of the *state of mind* associated with the absence of reasonable doubt ("moral certainty"). Thus the instruction given

was substantially at odds with the meaning of the statutory definition.

Second, if a California trial court gave the instruction used in the instant case, reversal would be required. *See People v. Bemmerly,* 87 Cal. 117, 121, 25 P. 266 (1890) (similar instruction held to be reversible error). This is significant because the definition of reasonable doubt chosen by the Guam legislature is virtually identical to the definition found in 1 CALJIC No. 2.90 (4th ed. 1979),[10] which in turn is identical to the definition found in California Penal Code § 1096.[11] In fact, whenever there is a question concerning the interpretation of civil or criminal provisions of Guam law which have been adopted from California statutes, reliance on California law is proper. *Guam Econ. Dev. Auth. v. Ulloa,* 841 F.2d 990, 992 (9th Cir.1988); *Guam v. Ojeda,* 758 F.2d 403, 406 (9th Cir.1985); *Roberto v. Aguon,* 519 F.2d 754, 755 (9th Cir.1975).[12] Thus, faced with the identical statute in Guam, we take our cue from the California courts.

We recognize that however much we may disagree with the judgment section 90.23(a) expresses—and however strongly we may be inclined to side with those jurisdictions that reject the "moral certainty" language—this court has neither the duty nor the right to substitute its judgment for that of the Guam legislature. The instruction given by the trial court is erroneous

---

**9.** Section 90.23(b) clearly gives a trial court in Guam neither the unbridled discretion to instruct the jury in any language it chooses, nor the liberty to embellish the statutory instruction. The statutory instruction reflects the Guam legislature's choice of the definition which it felt best avoided the danger of confusing a jury on the matter of reasonable doubt, by constraining a trial judge in the formulation of an appropriate instruction.

**10.** The definitions are identical, except that California employs the term "jury" in places where Guam uses "trier of fact", and "jurors" in places where Guam uses "he."

**11.** In the years since California Penal Code section 1096 was enacted, variations from the wording of the statute have been met with sharp disapproval by the California appellate courts. The statute's language

has with near, if not complete, universality been accepted as the best definition of the concept of proof beyond a reasonable doubt. Well intentioned efforts to "clarify" and "explain" these criteria have had the result of creating confusion and uncertainty, and have repeatedly been struck down by the courts of review of this state.
*People v. Garcia,* 54 Cal.App.3d 61, 63, 126 Cal. Rptr. 275 (1975), *cert.denied,* 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976).

**12.** California case law is particularly relevant here because the statutory development of section 1096 is identical to that of Guam Criminal Code section 90.23. In both cases a variety of definitions for reasonable doubt had been tried, with varying degrees of success, prior to the adoption of the current language. *See People v. Brigham,* 25 Cal.3d 283, 294, 157 Cal.Rptr. 905, 599 P.2d 100 (1979)(Mosk, J., concurring).

under Guam law and therefore we must reverse.

## IV.

The proper standard for this court's review of interpretations of Guam law made by the Appellate Division of the District Court, is the de novo standard. In the instant case, the Appellate Division improperly relied upon an unpublished decision of this court in assessing the propriety of the reasonable doubt instruction given at trial. Moreover, that instruction is erroneous under Guam law.

The decision of the Appellate Division is REVERSED and the case REMANDED for a new trial.