**The PEOPLE OF THE TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Irvin IBANEZ, Defendant–Appellant.**

**No. 88–1412.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1989.

Decided by Memorandum July 5, 1989.

Order and Opinion July 19, 1989.

Thomas I. Roberts, Moore, Ching, Boertzel & Lawlor, Agana, Guam, for defendant-appellant.

J. Andrew Boname and J. Nicholas Bostic, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before BROWNING, HALL and LEAVY, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant Irvin Ibanez was convicted of committing a brutal murder. He stabbed the victim, Scott Pierce, 40 times and then decapitated him. For this heinous offense, defendant was sentenced to life imprisonment without the possibility of parole, probation, or work release. We are constrained by an en banc decision of this circuit to reverse the conviction.

I

On March 8, 1986, defendant Ibanez ("defendant"), his brother Christopher Ibanez ("Christopher"), Peter Cruz ("Cruz"), and Scott Pierce ("Pierce") got together for the evening. They began drinking alcohol. Later that evening, the men engaged in horseplay, which consisted of playful punching and name calling. This horseplay turned serious when Pierce punched Christopher with too much force, and Christopher responded in kind. Defendant intervened, and a verbal exchange between him and Pierce ensued. The four men then entered defendant's jeep and set out to the place where Christopher and Pierce had parked their cars.

Upon arrival, defendant and his brother Christopher told Pierce to leave the group. When Pierce refused, Christopher began pushing him towards his car. Christopher then struck Pierce, who still refused to leave. At this point, defendant joined the

altercation by grabbing Pierce, putting him into a headlock, and slamming his head repeatedly against the jeep's pushbar. Defendant then dragged Pierce towards Pierce's car and shoved him in the back seat. Pierce pleaded to be let go, but defendant responded that it was too late.

Defendant drove Pierce to another part of town, stopping only to punch Pierce. Upon arrival, defendant jumped into the back seat and resumed beating Pierce. During the beating, defendant ordered his brother Christopher to get him a knife. Cruz retrieved a knife from the glove compartment and handed it to defendant's brother, who gave it to defendant. Defendant grabbed the knife and began stabbing Pierce. When the stabbing ceased, defendant had managed to puncture Pierce 40 times, killing him.

Christopher and Cruz departed at some point during the slaying. Defendant then cut off Pierce's head. He left the body in the car in one part of town, and buried the head in another part.

Defendant and his brother were charged with aggravated murder, kidnapping, and possession and use of a deadly weapon in the commission of a felony. As his defense, defendant denied culpability. This

defense was unsuccessful, and the jury convicted him on all counts.

█ Defendant appealed the conviction to the Appellate Division of the District Court of Guam. The Appellate Division affirmed. Defendant now seeks review from this court. We have jurisdiction over this timely appeal under 48 U.S.C. § 1424-3 (Supp. IV 1986).[1]

## II

█ On appeal, defendant contends that his conviction must be overturned because the trial court erroneously defined "beyond a reasonable doubt." The trial court provided the following definition, to which defendant did not object:

> The test is one of reasonable doubt. Reasonable doubt is a doubt that's based upon commonsense and reason. And it's the kind of doubt that makes a reasonable person sort of hesitate to do a certain act. Therefore, proof beyond a reasonable doubt is proof of such a convincing character that would make a reasonable person without hesitation rely and act upon it in the most important of his or her own affairs.

1. In this appeal, defendant raises an issue concerning the propriety of the trial court's "beyond a reasonable doubt" instruction. The government makes a confusing argument that we are without jurisdiction to rule on this issue because the Appellate Division has not had an opportunity to address it. As we make our way through the confusion, actually two points are made.

First, the government contends that we are bound by the Supreme Court's principle that it has no certiorari jurisdiction over decisions from state courts where the federal question at issue has not been "pressed nor passed upon" in state court. *Illinois v. Gates*, 462 U.S. 213, 218–19, 103 S.Ct. 2317, 2321–22, 76 L.Ed.2d 527 (1982). According to the government, we must follow this principle because of our declaration in *Guam v. Yang*, 850 F.2d 507, 510 n. 4 (9th Cir.1988) (en banc) ("*Yang II*"), that "[u]ntil Guam establishes its own appellate court, this court shall serve as Guam's 'Supreme Court,' hearing appeals from the Appellate Division." This argument is meritless. Initially, the government incorrectly states the holding in *Gates*. The Court explicitly declined to decide whether this principle is jurisdictional or prudential. *Gates*, 462 U.S. at 222, 103 S.Ct. at

2323–24. Moreover, the en banc panel in *Yang II* declared the Ninth Circuit *Guam's* Supreme Court, not the Supreme Court of the United States. In any event, we may exercise our discretion and review an issue not raised below, even if the Appellate Division expressly declined to do so. Cf. *In re Marvin Properties, Inc.*, 854 F.2d 1183, 1187 (9th Cir.1988) ("fact that the [Bankruptcy Appellate Panel] acted within its discretion in refusing to reach [an issue not raised before the bankruptcy court] does not resolve the question whether we should address it").

Second, the government argues that we lack jurisdiction because the Appellate Division did not consider this issue, and thus there is no "final decision." The government's citation to *Guam v. Manibusan*, 729 F.2d 1236 (9th Cir. 1984), for this conclusion is misplaced. There we concluded that the Appellate Division's *remand for further proceedings* deprived this court of jurisdiction, at least without the presence of an exception to the final judgment rule. *See id.* at 1238; *see also Kiaaina v. Jackson*, 851 F.2d 287, 289 (9th Cir.1988) (no final judgment generally where further proceedings contemplated). Obviously, no further proceedings in the trial court were contemplated in this case.

The Guam Legislature has proposed a different definition, which reads:

> Reasonable doubt ... is not a mere possible doubt because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the mind of the trier of fact in that condition that he cannot say he feels an abiding conviction to a moral certainty, of the truth of the charge.

8 Guam Code Ann. § 90.23 (1985).

■ In *Guam v. Yang*, 850 F.2d 507 (9th Cir.1988) (en banc) (*"Yang II"*), a unanimous en banc panel addressed the same disparity in definitions presented in this case. While recognizing the permissive nature of Guam's statutory definition, the court nevertheless concluded that the trial court's definition was erroneous under Guam law. *Id.* at 513–14. The en banc panel concluded that this error required reversal. *Id.* *Yang II* was decided on June 20, 1988, well after defendant's trial and after the briefing was completed for the Appellate Division.[2]

■ The Government of Guam insists that *Yang II* does not control the disposition of this case. The government's argument centers around the review the court applied to the case. The court in *Yang II* concluded that its review of the instruction should be for reversible error, not for plain error, despite defendant's failure to lodge a contemporaneous objection before the trial court. In arriving at this conclusion, the en banc panel invoked the so-called *Scott* exception to the general rule that unobjected-to instructions are reviewed for plain error. *See United States v. Scott*, 425 F.2d 55 (9th Cir.1970) (en banc). In *Scott*, the Ninth Circuit adopted the principle that

contemporaneous objection is not required when it would be futile because "a solid wall of circuit authority" forecloses the trial court from ruling otherwise. *Id.* at 57–58, *quoted in Yang II*, 850 F.2d at 512 n. 8. In holding that the case fit within the *Scott* exception, the *Yang II* court reasoned:

> We believe that the *Scott* exception applies to the unique facts of this case. Both the government and the defense had requested an instruction in accordance with the reasonable doubt instruction contained in section 90.23(a). The trial court, however, decided to give the nonstatutory reasonable doubt instruction based on *Guam v. Ignacio*, Cr.App. No. 79–00036A (D.Guam App.Div.), *aff'd*, 673 F.2d 1339 (9th Cir.1982). In *Ignacio*, which we affirmed prior to Yang's trial, we approved the same nonstatutory reasonable doubt instruction that the trial court gave in this case. In light of our decision in *Ignacio*, the fact that Yang's trial was before the same judge who heard *Ignacio*, and Guam's erroneous practice of relying on our unpublished decisions as binding precedent, we conclude that, as in *Scott*, an objection would have been futile because the trial court would not have changed its decision.

*Yang II*, 850 F.2d at 512 n. 8.

The government attempts to distinguish *Yang II*. First, the government points out that, unlike in *Yang II*, defendant made no request for the statutory instruction. However, the *Yang II* court did not conclude that a request was tantamount to an objection; it thus resorted to the *Scott* exception. Indeed, a fair reading of *Yang II* indicates that the court did not attach much significance to the fact that a request was made; instead, the court appeared to note this by way of background to the

---

**2.** The settled rule in this circuit is that issues not raised before the trial court will not be reviewed for the first time on appeal. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *Guam v. Okada*, 694 F.2d 565, 570 n. 8 (9th Cir.1982), *modified*, 715 F.2d 1347 (1983), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 367 (1984). However, this rule,

which is merely one of practice, is subject to certain exceptions. *Okada*, 694 F.2d at 570 n. 8. The issue on appeal in this case falls within at least two of these exceptions. First, the issue presented is purely a matter of law. Second, the issue arose in response to an en banc opinion of this circuit that postdated defendant's trial. See text accompanying this footnote.

futility discussion. After noting this fact, the court summarized the reason for applying the *Scott* exception, which we repeat:

> In light of our decision in *Ignacio,* the fact that Yang's trial was before the same judge who heard *Ignacio,* and Guam's erroneous practice of relying on our unpublished decisions as binding precedent, we conclude that, as in *Scott,* an objection would have been futile because the trial judge would not have changed its decision.

*Id.* In the end, in both *Yang II* and in this case, defendants failed to object to the instruction before the trial court.

Second, the government urges us to distinguish *Yang II* based on a phrase employed in the majority opinion[3] of the three-judge panel that originally decided that case. *See Guam v. Yang,* 800 F.2d 945 (9th Cir.1986) (*"Yang I"*). *Yang I,* which was decided prior to defendant's trial, reviewed the same nonstatutory instruction given in this case, by the same judge as in this case, and held that "[t]he trial court's earlier instruction on the nature of reasonable doubt was a permissible formulation of the government's burden of proof,

at least in the absence of objections." *Id.* at 948. The government seizes on the language "at least in the absence of objections," arguing that this required defendant to voice a contemporaneous objection. However, the thrust of *Yang I* clearly is that under Guam law the nonstatutory instruction was proper. We are unpersuaded that the insertion of this phrase into the conclusion of *Yang I* served to dismantle the "solid wall of authority" the unanimous en banc panel in *Yang II* found to exist prior to the *Yang I* decision.

In sum, we find that the facts of this case cannot be distinguished meaningfully from the facts in *Yang II.* As in *Yang II,* the same trial judge that heard *Ignacio* presided over defendant's case. And as in *Yang II,* Guam maintained the practice of relying on our unpublished decisions as binding precedent. Finally, contrary to the government's position, we conclude that *Yang I* could only add to the trial judge's confidence that his nonstatutory formulation was proper. Consequently, we hold that *Yang II* controls this case and that our review is thus for reversible error.[4] The *Yang II* decision found the nonstatutory

---

3. Judge Ferguson filed a dissent in *Yang I.* The government claims that this dissent should have alerted defendant to the propriety of a contemporaneous objection urging the statutory instruction. We fail to see how this factor distinguishes *Yang II.* The majority opinion, despite the dissent, still stated the law at the time of defendant's trial. The trial court of Guam, if asked to rule on an objection to the instruction, would have been bound by the majority's decision. In addition, *Yang II* emphasized that, in large measure, Guam's erroneous practice of relying on the Ninth Circuit's unpublished dispositions would have made a contemporaneous objection by Yang futile. *Yang II,* 850 F.2d at 512 n. 8. For in the unpublished decision in *Ignacio,* a majority approved the same nonstatutory instruction that was given in *Yang II.* Significantly, Judge Ferguson also filed a dissent in *Ignacio,* arguing that the nonstatutory instruction provided violated Guam law. This fact did not dissuade the *Yang II* court from applying the *Scott* exception.

4. The government argues that even if we apply *Yang II,* we should defer to Guam's Appellate Division's interpretation of local law. According to the government, the Appellate Division has addressed the issue presented in this appeal in three cases since the *Yang II* decision. *See*

*Guam v. Kitano,* D.Guam App.Div. No. 87–18A, *Guam v. Castro,* D.Guam App.Div. No. 87–33A, *Guam v. Dalmal,* D.Guam App.Div. No. 88–8A. In these three cases, the trial court gave a nonstatutory instruction like the one given in this case. No contemporaneous objection was made. Distinguishing *Yang II,* the Appellate Division rejected the reversible error standard.

The government's argument is remarkable. The government "concedes that this is directly in conflict with *Yang II* but believes that the *en banc* panel was not aware of many important factors in reaching its conclusion of a 'no-deference' standard of review." The government proceeds to devote twelve pages of its opening brief explaining why the en banc court erred.

The court in *Yang II* stated unequivocally: "[W]e hold that the proper standard of review for questions of law is a de novo standard, which accords no deference to interpretations of local law by the Appellate Division of the District Court of Guam." *Yang II,* 850 F.2d at 511. Of course, we are bound by that decision. Sitting as a three-judge panel, we have no authority to reconsider the law established in an en banc case. Indeed, we could not reconsider the law in that case were it decided by a three-judge panel, let alone an en banc panel. *Christoffel v. E.F. Hutton & Co.,* 588 F.2d 665, 667 (9th Cir.1978).

instruction to warrant reversal. We must reach the same conclusion.

## III

 The salient facts in our unanimous en banc decision in *Yang II* mirror the facts in the case before us. *Yang II* concluded that, under the circumstances of that case, "an objection would have been futile because the trial court would not have changed its decision." *Yang II*, 850 F.2d at 512 n. 8. The court thus reviewed the trial court's "beyond a reasonable doubt" instruction for reversible error and reversed the conviction. On the authority of *Yang II*, we are compelled to overturn defendant's conviction on all counts.[5]

Reversed and remanded for a new trial.

---

**5.** Alternatively, we reverse the conviction because of the trial court's erroneous admission of certain hearsay evidence. The government called Manuel Leon Guerrero ("Guerrero"), the brother of Cruz, to testify about a conversation he had with defendant. Guerrero spoke with his brother, Cruz, after the slaying but before talking to the detective. When Guerrero refused to testify, the government instead called to the stand a detective to whom this conversation was related. At the time Guerrero gave this information to the detective, he himself was being investigated for allegedly tampering with the vehicle identification numbers on the jeep defendant drove on the night of the slaying, a felony under Guam law.

Contrary to the government's position, the detective's testimony is not admissible under 6 Guam Code Ann. § 804(b)(5), the "catch-all" hearsay exception (which is based on Fed.R. Evid. 804(b)(5)). Prerequisite to this exception's application, the hearsay evidence must have "equivalent circumstantial guarantees of trustworthiness." *Id.* The Appellate Division of Guam concluded that the circumstances surrounding Guerrero's statements to the detective failed to satisfy this prerequisite. We agree. However, we disagree with the Appellate Division's conclusion that the error was harmless.

---

*See United States v. Wellington,* 754 F.2d 1457, 1465 (9th Cir.) (employing harmless error review), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). The Appellate Division relied on the testimony of two witnesses in making this determination. One was an eyewitness—Cruz, who actually handed the knife to Christopher, who then gave it to the defendant. Cruz, therefore, was implicated in the crime. The other witness, who testified about incriminating statements purportedly made by defendant, was a fellow inmate of defendant.

We are unable to say, on the strength of the testimony of these two men, that the admission of the detective's testimony, which directly implicated defendant without cross-examination, was harmless error. The facts surrounding their testimony raise very serious doubts about their trustworthiness. Accordingly, we find the error to require reversal. *See Gaines v. Thieret,* 846 F.2d 402, 406–07 (7th Cir.1988) (no harmless error where remaining evidence was of questionable credibility).